United States District Court
Southern District of Texas
**ENTERED**
September 09, 2016
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **OSCAR ALBERTO ESCALANTE,** | § | |
| **Petitioner** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:15-99** |
| | § | **Criminal No. B:14-481-1** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent** | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On June 2, 2015, Petitioner Oscar Alberto Escalante filed a Motion to Vacate, Set Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2255. Dkt. No. 1. Escalante has asserted that his trial lawyer was ineffective for: (1) allowing him to plead guilty to illegal re-entry as opposed to simply "illegal entry;" (2) for informing him that he "would only serve a sentence of between 18 and 24 months incarceration as consideration for accepting the plea agreement;" (3) failing to review the PSR with Escalante and failing to file any objections to the PSR; (4) failing to object to the sentence and to Escalante being brought to court in shackles; and, (5) failing to meet him with regarding filing an appeal and not filing a notice of appeal.

On December 1, 2015, the Court held an evidentiary hearing as to whether Escalante instructed his attorney to file a notice of appeal.

After reviewing the record and the relevant case law, the Court recommends that the petition be denied. In sum, Escalante has failed to meet the burden established by law that would entitle him to the relief he seeks.

## I. Background

### A. Factual Background

On June 17, 2014, a federal grand jury – sitting in Brownsville, Texas – indicted Escalante for illegally re-entering the United States, after having been previously removed from the country. U.S. v. Escalante, Criminal No. 1:14-481, Dkt. No. 5 (J. Hanen, presiding) (hereafter "CR"). Rebecca RuBane was appointed to represent him. CR Dkt. No. 3.

On July 9, 2014, Escalante pled guilty before the Magistrate Judge to illegally re-entering the United States. CR Dkt. Nos. 11, 44.  Escalante entered into a plea agreement with the United States. CR Dkt. No. 13.

The plea agreement included a written waiver of Escalante's appellate rights, which read as follows:

> Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed.  The defendant knowingly and voluntarily waives the right to appeal the conviction and the sentence imposed or the manner in which the sentence was determined. Additionally, the defendant is aware that Title 18, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.  The defendant knowingly and voluntarily waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.  If the defendant files a notice of appeal following imposition of sentence, the government will seek specific performance of this provision.

CR Dkt. No. 13, pp. 4-5, ¶ 11.

At his re-arraignment hearing, Escalante was asked about his understanding of the waiver of appellate rights provision in his plea agreement.

> [The Court]: In Paragraph 11 [it] states that you were aware of your right to appeal your sentence and the right to collaterally attack the conviction and sentence after they become final. In the same Paragraph 11 each one of you is waiving and giving up your right to appeal your sentence including any grounds set forth in Title 18 United States Code Section 3742, and you're also giving up your right to appeal your conviction and sentence after it becomes final under the provisions of Title 28 United States Code Section 2255. You will, however, retain your limited right of appeal based on any claims you may have for ineffective assistance of counsel on behalf of your attorney, prosecutorial misconduct on behalf of the Government's attorney, or any mistake of law that you believe was created by the Court.
> Do you understand that . . . Mr. Escalante?
> [Escalante]: Yes.
>
> CR Dkt. No. 44, pp. 35-36.

2

Thus, the record – on its face – would seem to indicate that there was a conflict between the terms in Escalante's written plea agreement and his understanding of those terms during the plea colloquy.[1]

In the final presentence report ("PSR"), Escalante was assessed a base offense level of eight. CR Dkt. No. 19, p. 4. Escalante was also assessed a 16-level enhancement for a 2004 state felony conviction for domestic violence. Id., p. 5. Escalante was afforded a three-level reduction for acceptance of responsibility. Id. Thus, Escalante was assessed a total offense level of 21. Id.

Regarding his criminal history, Escalante had fifteen adult criminal convictions, resulting in nine criminal history points. CR Dkt. No. 19, pp. 6-12. Escalante was also assessed two additional points, because he was on state probation at the time that he committed the instant offense. Id. With a total of 11 criminal history points, Escalante was assessed a criminal history category of V. Id. The presentence report, based upon Escalante's offense level of 21 and criminal history category V, identified a guideline range of 70 to 87 months of imprisonment. Id., p. 16.

At sentencing, the Court asked, "Mr. Escalante, did you go over the presentence investigation report with Ms. RuBane?" CR Dkt. No. 34, pp. 2-3. Escalante replied, "Yes." Id.

On October 16, 2014, the District Court sentenced Escalante to 78 months of incarceration, three years of supervised release and a $100.00 special assessment, the latter of which was ordered remitted. CR Dkt. No. 34, pp. 5-6; CR Dkt. No. 26. The judgment was issued on November 5, 2014. CR Dkt. No. 23.

Neither the District Court docket, nor the Fifth Circuit docket, reflect the filing of a direct appeal. A notice of appeal must be filed within 14 days from the entry of judgment. FED. R. APP. P. 4(b)(1)(A)(I), 26(a)(2). Thus, Escalante's deadline for filing a notice of

---

[1] Whether the explanation of rights was based solely upon the terms of the agreement or was also based upon the rights that the defendant possessed independent of the agreement need not be decided here. Because the result is unaffected, the Court will assume for purposes of this recommendation that the advisement of rights was based just upon the terms of the agreement.

appeal passed on November 19, 2014, without an appeal being filed.

On June 2, 2015, Escalante filed the instant petition, containing the allegations set forth earlier.  Because of the nature of some of those allegations, a § 2255 hearing evidentiary hearing was held on December 1, 2015.  At that hearing, RuBane testified that after the sentencing hearing, she prepared a "statement of non-appeal" for Escalante to sign, affirming that he wished to waive his right to an appeal. Dkt. No. 30, pp. 18-19.  When she arrived at the county jail to visit Escalante, she was informed that he had already been transferred; the jail officials did not inform her that he was still being held in Cameron County. Id., pp. 18-19, 25.  She testified that Escalante never informed her that he wanted her to file an appeal in his case. Id.  In RuBane's words, Escalante "never once mentioned" a desire to file an appeal. Id, p. 29.

At the December 2015 evidentiary hearing, Escalante testified that at the conclusion of his sentencing hearing – in October 2014 – he "looked at Ms. Rubane and [] told her, 'I need to speak to you about my appeal.' " Dkt. No. 30, p. 36.  The Court later asked Escalante, "did you ever tell [RuBane] to file an appeal?"  Id., p. 49. Escalante replied, "no." Id.

Escalante also testified that he and his wife each tried calling the phone number for RuBane found on the front page of his PSR. Id, pp. 38-39.  He testified that "the lady that answered the phone said that Ms. RuBane no longer had any office space in that building." Id.  RuBane testified that the phone number on the front of the PSR was placed there by probation, was not accurate, and that Escalante had a business card with her correct number. Id, pp. 27-30.  Escalante's wife did not testify.

### B. Procedural History

As noted earlier, Escalante timely filed the instant § 2255 motion, requesting that the District Court vacate, set aside, or correct his sentence. Dkt. No. 1.  In that June 2, 2015, § 2255 motion, Escalante asserted that his trial lawyer was ineffective for: (1) allowing him to plead guilty to illegal re-entry as opposed to simply "illegal entry;" (2) for informing him that he "would only serve a sentence of between 18 and 24 months incarceration as

consideration for accepting the plea agreement;" (3) failing to review the PSR with Escalante and failing to file any objections to the PSR; (4) failing to object to the sentence and to Escalante being brought to court in shackles; and, (5) failing to meet him with regarding filing an appeal and not filing a notice of appeal. Dkt. No. 2.

On August 12, 2015, the Government filed a response to the petition. Dkt. No. 16. The Government asserted that the first four claims of ineffective assistance, identified above, were meritless on their face. As to the fifth claim, the Government stated that an evidentiary hearing was needed to establish whether Escalante requested that Ms. RuBane file a notice of appeal. Id.

On September 10, 2015, the Court issued an order for the parties to appear for an evidentiary hearing on the issue of whether Escalante's counsel failed to file a requested notice of appeal. Dkt. No. 17. The Court also appointed counsel for Escalante.

As discussed above, the evidentiary hearing was held on December 1, 2015. During that hearing the Court received evidence as to whether Escalante instructed his attorney to file a notice of appeal. Both, Escalante and his original trial counsel – Ms. Rubane – testified. Dkt. No. 30.

## II. Applicable Law

### A. Section 2255

Escalante seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1. As relevant here, that section provides:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Where a § 2255 petitioner exhausts or waives his direct appeal, courts may presume that he was fairly convicted. U.S. v. Willis, 273 F.3d 592, 595 (5th Cir. 2001). Generally,

a petitioner may not raise on collateral attack issues that he failed to raise on direct appeal, absent a showing of cause and prejudice. Id.  An exception to this rule, requiring prior direct appeal, are claims of ineffective assistance of counsel.  Such claims are properly made pursuant to § 2255, because they are issues of constitutional magnitude that cannot – as a general rule – be resolved on direct appeal. U.S. v. Bass, 310 F.3d 321, 325 (5th Cir. 2002).

"In a habeas action, federal courts stand willing to review issues of jurisdiction, allegations of substantial constitutional violations, and claims that exceptional circumstances resulted in a fundamental miscarriage of justice." Lawrence v. McCarthy, 344 F.3d 467, 474 (5th Cir. 2003).

Nevertheless, as a general matter, an informed and voluntary waiver of post-conviction relief bars relief pursuant to 28 U.S.C. § 2255. U.S. v. Del Toro-Alejandre, 489 F.3d 721, 722 (5th Cir. 2007).  Waiver will not preclude relief, however, if petitioner's waiver and guilty plea are the product of ineffective assistance of counsel.  See U.S. v. White, 307 F.3d 336, 343 (5th Cir. 2002) (holding that an ineffective assistance of counsel claim may only challenge the assistance directly related to the effectiveness of the waiver).

## B. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). U.S. v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004).  To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and, (2) that the deficient performance prejudiced the defendant. Id.  To prove that counsel's performance was deficient, petitioner must show that "it fell below an objective standard of reasonableness." U.S. v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012).  Courts will not "audit decisions that are within the bounds of professional prudence." U.S. v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005).

Prejudice is established by proving "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  If a petitioner fails to prove one prong, it is not necessary to analyze the

other one. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994).

Once convicted, a federal defendant has an absolute right to file an appeal. U.S. v. Pineda-Arrellano, 492 F.3d 624, 627 (5th Cir. 2007) (citing Coppedge v. U.S., 369 U.S. 438, 441 (1962)). If a defendant informs his attorney that he wishes to file an appeal, the attorney must do so. Roe v. Flores-Ortega, 528 U.S. 470, 483-85 (2000). If the attorney fails to file a requested notice of appeal, then the defendant has been denied an "entire judicial proceeding," to which he was absolutely entitled. Id., p. 483. Under such circumstances, the attorney's performance is per se prejudicial to the defendant. Id.

A petition pursuant to § 2255 is the appropriate vehicle through which to challenge an attorney's failure to file a requested notice of appeal. U.S. v. Flores, 380 Fed. App'x. 371, 372 (5th Cir. 2010) (unpubl.) (noting that "such a claim is properly asserted in a § 2255 motion"). The petitioner must establish, by a preponderance of the evidence, that there is a "reasonable probability" that, but for counsel's failure to file a notice of appeal, the petitioner would have timely appealed. Flores-Ortega, 528 U.S. at 484; U.S. v. Tapp, 491 F.3d 263, 266 (5th Cir. 2007). The Court does not require the defendant to "identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver." Id.

Furthermore, a defense attorney "has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." U.S. v. Cong Van Pham, 722 F.3d 320, 324 (5th Cir. 2013) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000)). In order to establish prejudice for counsel's failure to consult, the defendant must show by a preponderance of the evidence that, but for counsel's failure, he would have timely filed a notice of appeal. Id. The defendant does not need to show that the appeal would have been meritorious. Id. This prejudice test applies even when the defendant waived the right to appeal. Id.

"A preponderance of the evidence means only that it is more likely than not that a fact

is true." <u>U.S. v. Nielson</u>, 455 Fed. App'x. 526, 527 (5th Cir. 2011) (unpubl.) (citing <u>U.S. v. Barksdale–Contreras</u>, 972 F.2d 111, 115 (5th Cir. 1992).  With these various standards in place, the Court turns to the merits of Escalante's claim.

## III. Analysis

As set forth above, Escalante asserts that his trial lawyer was ineffective in five ways: (1) allowing him to plead guilty to illegal re-entry; (2) for telling him that his sentence would be between 18 and 24 months; (3) failing to review or object to the PSR; (4) failing to object to the sentence; and, (5) failing to file a notice of appeal.

The first inquiry is whether there was an effective waiver of appellate rights by Escalante.  Because the Court concludes that there was no such waiver under the facts presented here, the merits of Escalante's claims are considered. After examining the facts and law applicable to each claim, the Court concludes that none of the claims are supported by facts sufficient to met the allotted burden, for which reason they should be denied.

### A. Waiver of Right to Appeal

In various allegations, Escalante has asserted that his counsel was ineffective.[2]  The Government has sought specific performance of the waiver of appellate rights provision in the plea agreement.  The Court concludes that in this particular case, the waiver is unenforceable.

The written plea agreement makes clear that Escalante is waiving "the right to contest his/her conviction or sentence by means of <u>any</u> post-conviction proceeding." CR Dkt. No. 13, ¶ 11 (emphasis added).  No exception was listed for any claim that, despite the waiver, Escalante could raise on appeal or collateral attack.  There are certain ineffective assistance claims which a defendant retains, even when he or she waives his/her appellate rights. <u>See,</u>

---

[2] Even if the Court concluded that the waiver of appellate rights – in the plea agreement – was enforceable, such a waiver would not apply to Escalante's claim that RuBane failed to file an appeal on Escalante's behalf.  Even with such a waiver, Escalante is entitled to have his lawyer consult with him about an appeal and to have an appeal filed, if he wishes.  This right exists irrespective of any appellate waiver that he may have entered into. <u>Cong Van Pham</u>, 722 F.3d at 324; <u>Tapp</u>, 491 F.3d at 266.

e.g., U.S. v. White, 307 F.3d 336, 343 (5th Cir. 2002) ("an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself."). The colloquy, however, did not identify which claims of ineffective assistance could be challenged later. Thus, rather than reading something into the colloquy, the Court will assume – for present purposes – that Escalante understood the Court to be referring to all possible claims of ineffective assistance.

This assumption finds support in the exchange between the Magistrate Judge and Escalante. During the re-arraignment, Escalante was asked if he understood that he was waiving his right to appeal, except in instances of "ineffective assistance of counsel on behalf of your attorney, prosecutorial misconduct on behalf of the Government's attorney, or any mistake of law that you believe was created by the Court." CR Dkt. No. 44, pp. 35-36. Escalante replied, "Yes," which seems to indicate that those exceptions to the appellate rights waiver were the ones he understood. Id. Given the assumption that the Court previously identified – that the colloquy was addressing all possible claims of ineffective assistance – there is arguably a conflict between the rights retained and the scope of the written plea agreement.

The Fifth Circuit has decided that when the written waiver of appellate rights conflicts with the colloquy at the re-arraignment hearing, then FED. R. CRIM. P. 11(b)(1)(N) is violated. That rule requires the Court to advise the defendant of "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." FED. R. CRIM. P. 11(b)(1)(N). In those circumstances – where the colloquy does not accurately describe the contents of the written waiver – the appeal waiver is not knowing and voluntary and is unenforceable. U.S. v. Whavers, 166 F. App'x 112, 114 (5th Cir. 2006) (unpubl.) (citing U.S. v. Robinson, 187 F.3d 516, 517-18 (5th Cir. 1999)); U.S. v. Diaz, 344 F. App'x 36, 40 n. 1 (5th Cir. 2009); U.S. v. Rodriguez-Perez, 184 Fed.Appx. 451, 453 (5th Cir. 2006); U.S. v. Hernandez Flores, 155 Fed. App'x. 745, 746 (5th Cir. 2005).

Given the exchange at the re-arraignment, there is arguably a conflict between the written plea agreement and the rights that Escalante was told that he retained. The written

plea agreement indicated that Escalante was waiving all possible issues and avenues for appeal and collateral attack. CR Dkt. No. 13, ¶ 11.  The oral explanation indicated that Escalante was not waiving claims of ineffective assistance, prosecutorial misconduct or judicial errors.  The colloquy did not make clear whether it was discussing rights that Escalante independently retained, regardless of the written waiver of rights, or whether it was a summation of the written waiver of appellate rights.  While the Court views the former to be the more likely explanation, Escalante could have reasonably believed that he was waiving fewer rights than indicated by the written plea agreement.  Because of this possibility, and in an abundance of caution, the Court will assume that the waiver of appellate rights was not knowing and voluntary. Whavers, 166 Fed. App'x at 114.  Because it was not knowing and voluntary, it is unenforceable. Id.  Thus, the Court will address the merits of Escalante's claims.[3]

### B. Illegal Re-Entry

Escalante asserts that his counsel was ineffective for having him plead guilty to illegal re-entry as opposed to what he labels "illegal entry."  It appears that he is arguing that he should have been indicted and convicted under 8 U.S.C. § 1325 instead of § 1326.  This claim is meritless.

Escalante was indicted – and convicted – for violating 8 U.S.C. § 1326(a) and (b)(1).  CR Dkt. No. 5.  Section 1326 establishes that it is a felony for an alien to enter, attempt to enter, or to be found in the United States – without having obtained the permission of the appropriate authorities – after "be[ing] denied admission, excluded, deported, or removed."  8 U.S.C. § 1326(a)(1)-(2).

---

[3] The Court notes that the Department of Justice has instituted a policy regarding waivers of appellate rights and claims of ineffective assistance of counsel.  As to claims of ineffective assistance of counsel, the Government will not seek specific performance of the appellate waiver in two instances: (1) when defense counsel's assistance was deficient and the defendant was prejudiced; or, (2) when the defendant raises "a serious debatable issue that a court should resolve."  Memorandum from James M. Cole, Deputy Attorney General, to All Federal Prosecutors (Oct. 14, 2014) (found at: http://pdfserver.amlaw.com/nlj/ DOJ_Ineffective_Assistance_Counsel.pdf). Even if this policy otherwise applied in this case, it does not change the result; Escalante's claims are substantively meritless.

The record clearly showed that in January 2014, Escalante was convicted of a felony drug crime in a California state court and that he was deported to El Salvador in March 2014. CR Dkt. No. 19, pp. 10-11.  Thus, Escalante was deported and was found in the United States after that deportation.  No claim that he had obtained the requisite permission to re-enter the United State was shown; indeed, Escalante has not challenged the fact that he entered the United States illegally.  Accordingly, he was properly indicted, convicted and sentenced for violating § 1326(b)(1).

While Escalante could have been indicted for illegally entering the United States, pursuant to 8 U.S.C. § 1325(a) – a crime for which deportation is not an element of the offense – it was within the discretion of the U.S. Attorney's Office to decide which statutory violation to prosecute and which to present to the grand jury. U.S. v. Jeong, 624 F.3d 706, 713 (5th Cir. 2010).

Given that his indictment and conviction were proper, Escalante's trial defense attorney was not ineffective for failing to object. See Koch v. Puckett, 907 F.2d 524, 527 (5th Cir.1990) ("counsel is not required to make futile motions or objections.").  This claim should be denied.

### C. Sentence Length

Escalante asserts that he pled guilty because his lawyer promised him that he would receive between 18 and 24 months of incarceration.  As with the others, this claim should be denied.

The written plea agreement stated that Escalante was "aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court." CR Dkt. No. 13, p. 5.

At his re-arraignment, the Court informed Escalante that he "could end up with a different sentence, either more severe or less severe than what you're currently anticipate or what is otherwise called for under these advisory sentencing guidelines." CR Dkt. No. 44,

11

p. 32.  The Court then asked Escalante if he understood that; to which Escalante replied, "Yes." Id.

When asked if "anyone forced you or threatened you or promised you anything except what is contained in the Plea Agreement to get you to plead guilty?," Escalante replied, "no, sir." Dkt. No. 44, pp. 42-43.

"Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Escalante has not provided any facts to overcome that presumption.

Furthermore, when RuBane counseled Escalante on what his sentence would likely be, she was relying on him to give an accurate portrayal of his criminal history. Dkt. No. 30, pp. 13-14.  Based on the information Escalante provided, RuBane estimated that he would receive a Category III criminal history. Id.  Escalante's criminal history in the PSR revealed several "major felony convictions" that Escalante had not told RuBane about, resulting in a Category V criminal history. Id.  Thus, to whatever extent RuBane offered Escalante an inaccurate prediction of his sentencing range, it appears to have been based upon Escalante's incorrect recitation of his prior criminal history.

**D. PSR**

Escalante asserts that he was not timely provided with a copy of the PSR and his lawyer was ineffective for failing to object to its contents.  This claim is meritless and warrants no relief.

Federal Rule of Criminal Procedure 32(e)(2) establishes that the probation office "must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period."  In this case, sentencing occurred on October 16, 2014. CR Dkt. No. 26. Thus, to be timely the report had to be given to Escalante's attorney no later than September 11, 2014 – which is 35 days prior to sentencing.  The report was prepared on August 26, 2014. CR Dkt. No. 19.

Moreover, at that sentencing hearing, Escalante stated under oath that he had reviewed

the PSR with his attorney. See <u>U.S. v. Jackson</u>, 453 F.3d 302, 306 (5th Cir. 2006) (noting that a defendant has a right to "examine" the PSR and object to its contents)."By participating in the sentencing proceedings, including addressing the Court, without objecting to his purported failure to receive a timely copy of the Presentence Report, [the defendant] cannot now claim his counsel was ineffective for failing to provide him with the report." <u>Wehausen v. U.S.</u>, 820 F. Supp. 2d 128, 136 (D.D.C. 2011).

RuBane testified that she reviewed the PSR with Escalante on the morning of the sentencing hearing. Dkt. No. 30, p. 16.  When Escalante expressed shock at the guideline sentencing range, RuBane testified that she asked Escalante three times if he wanted her to seek a continuance so they could further study the report. <u>Id.</u>, p. 17.  Both Escalante and RuBane testified at the evidentiary hearing that Escalante did not instruct her to seek a continuance. <u>Id</u>, pp. 17, 34.  Thus, Escalante had an opportunity to seek additional time to review the report and expressly declined to do so.

By declining to seek a continuance and by participating in the sentencing hearing, Escalante waived any issues regarding whether the PSR report was provided to him in a timely matter.  As just noted, RuBane asked Escalante if he wanted her to seek a continuance so they could further review the report and Escalante declined that offer several times.  Thus, RuBane was not ineffective.  "Counsel will not be deemed ineffective for following his client's wishes, so long as the client made an informed decision." <u>Dowthitt v. Johnson</u>, 230 F.3d 733, 748 (5th Cir. 2000).

As to Escalante's claim that RuBane failed to object to the contents of the PSR, this claim is meritless.  Even with the passage of time since he was sentenced and the benefit of hindsight, Escalante was unable to identify any objections that RuBane should have made to the PSR.  "Absent evidence in the record, a court cannot consider a <u>habeas</u> petitioner's bald assertions on a critical issue in his <u>pro se</u> petition..., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." <u>Ross v. Estelle</u>, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (citing <u>Woodard v. Beto</u>, 447 F.2d 103 (5th Cir. 1971)).  In short, conclusory allegations are insufficient to raise a constitutional issue. <u>U.S.</u>

13

v. Pineda, 988 F.2d 22, 23 (5th Cir. 1993).  Accordingly, this claim should be denied.

### E. Objection to Sentence

Escalante asserts that his lawyer was ineffective for failing to object to his sentence and for failing to object to his being shackled at re-arraignment and sentencing.  Neither assertion merits relief.

As to the claim that RuBane should have objected to the sentence, any sentence within a properly-calculated guideline sentencing range is presumptively reasonable. U.S. v. Cooks, 589 F.3d 173, 186 (5th Cir. 2009).  "The presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." Id.

Escalante's guideline sentencing range was 70 to 87 months imprisonment; he received a sentence of 78 months.  Thus, his sentence was presumptively reasonable. Escalante has provided no evidence which would overcome the presumption of reasonableness.

Escalante's argument that he should not have been shackled is also unavailing.  A defendant should not ordinarily be shackled in the presence of the jury; absent particularized safety concerns, such shackling violates a defendant's due process rights. Deck v. Missouri, 544 U.S. 622, 629 (2005).  This right has never been extended to bench trials, guilty pleas or sentencing hearings. U.S. v. Davis, 754 F.3d 278, 283 (5th Cir. 2014).  Furthermore, Escalante has not shown prejudice from being shackled.  He asserts that if he had not been shackled, he would have "been more attentive to the proceedings and would have been able to object to the PSR as well as disclosed to the Court my understanding of the plea agreement." Dkt. No. 2, p. 22.  He does not state what objections he would have made to the PSR and there is no evidence, beyond his own self-serving testimony, to support his claim that he understood his plea agreement to promise him a sentence of 18 to 24 months.  Indeed, the plain text of the plea agreement and the re-arraignment colloquy show that there was no such understanding.  This claim is plainly meritless and should be denied.

14

### F. Failure to File Notice of Appeal

Escalante asserts that RuBane was ineffective because she failed to file a notice of appeal.  Escalante has failed to meet his burden as to this claim, for which reason it also should be denied.

While RuBane and Escalante have provided wildly divergent accounts of what happened in this case, they are consistent on one key point: at no time did Escalante instruct RuBane to file a notice of appeal.  RuBane was asked "did Mr. Escalante ever tell you that he wanted you to file a notice of appeal in his case?" Dkt. No. 30, p. 19. RuBane replied, "No, he did not." Id.  Escalante was asked, "did you ever tell [RuBane] to file an appeal?" Dkt. No. 30, p. 49.  He replied, "No." Id.

An attorney is per se ineffective when the defendant requests that a notice of appeal be filed and the attorney fails to file the notice. U.S. v. Tapp, 491 F.3d 263, 266 (5th Cir. 2007). Those are not the facts of this case.

RuBane testified that after the sentencing hearing was over, Escalante "told me that he wanted to see me." Dkt. No. 30, p. 18.  Escalante testified that he told RuBane that he specifically wanted to discuss his appeal, this simple assertion – which is significantly different from his attorney's testimony – is insufficient to satisfy the preponderance burden. See Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 137 n. 9 (1997) (under the preponderance standard, "when the evidence is equally balanced," the party who has the burden of persuasion "must lose.").

RuBane knew that Escalante wanted to speak with her, but did not know what he wanted to talk about. Id, p. 30.  The universe of possible subjects that Escalante could have wanted to discuss is quite large and an appeal is only one of those topics.  There is no evidence in the record that Escalante informed RuBane that he wanted her to file a notice of appeal.  There is also no evidence in the record that RuBane ever consulted Escalante about whether to file a notice of appeal; when she went to speak with him about it, she was informed that he was no longer housed at that facility.  Indeed, RuBane brought to that meeting a form waiving Escalante's right to appeal.  There is no basis to conclude – and

15

Escalante offers none beyond his own assertion – that RuBane was ever aware that Escalante had a desire to appeal his conviction or sentence.

Given that Escalante never instructed RuBane to file a notice of appeal – and the lack of evidence in the record that RuBane ever discussed with Escalante about whether an appeal should have been filed – the Court must assess RuBane's effectiveness under a different test: whether RuBane unreasonably breached the duty to consult with Escalante about an appeal. Cong Van Pham, 722 F.3d at 324.

"Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. (emphasis added).  This analysis is based on the information that counsel knew or should have known at the time. Id.

Furthermore, to establish prejudice from the failure to consult, the defendant must establish "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Cong Van Pham, 722 F.3d at 324.  The defendant does not need to show that his appeal would have been meritorious. Id.

As to the first prong, there is no basis to conclude that a rational defendant would have wanted to appeal in this case.  Escalante had waived his right to an appeal his conviction or sentence. CR Dkt. No. 13.  Given this waiver, his appeal would likely have been dismissed by the Fifth Circuit.  Thus, the first prong is not met, for which reason the Court turns to the second.

As to the second prong, the Fifth Circuit has concluded that a defendant being shocked or angered at a sentence does not reasonably demonstrate interest in filing an appeal. Cong Van Pham, 722 F.3d at 325.  The fact that Escalante was purportedly shocked by his guideline sentencing range and the fact that his sentence was not on the low end of that range does not demonstrate an interest in filing an appeal.  Thus, Escalante must show that he gave

some specific indication to RuBane that he wanted to appeal; no such showing has been made.

As previously noted, RuBane and Escalante both testified that, at the conclusion of the sentencing hearing, Escalante indicated that he wanted to speak with her. Dkt. No. 30, p. 18. Escalante testified that he specifically mentioned the filing of an appeal; RuBane testified that he never specified why he wanted to speak with her. The Court finds RuBane's testimony on this question to be more credible. See Louis v. Blackburn, 630 F.2d 1105, 1109 (5th Cir.1980) (discussing the deference given to a judge who conducted an evidentiary hearing based a habeas corpus claim and that judge's authority and discretion to make credibility findings based upon hearing and observing witness testimony). Having observed the behavior of both RuBane and Escalante, the Court concludes that RuBane is the more credible of the two. Indeed, Escalante's testimony was entirely self-serving and his previous record regarding facts – such as omitting several felonies when recounting his criminal history to RuBane – weigh heavily against finding his testimony credible.

Furthermore, RuBane testified that when she went to visit Escalante, after he was sentenced, she brought with her a notice of non-appeal that she had specifically prepared for him. If Escalante had previously informed her that he was interested in appealing, the Court questions whether RuBane would have prepared such a document. Indeed, experience and logic indicate that, if the facts were as represented by Escalante, Rubane would have prepared a notice of appeal to bring to their meeting.

Given this finding, there is no evidence in the record that Escalante reasonably demonstrated an interest in filing an appeal. Accordingly, RuBane was not ineffective for failing to consult him about a possible appeal. For that reason, this claim should also be denied.

## IV. Recommendation

WHEREFORE it is **RECOMMENDED** that Oscar Alberto Escalante's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, should be **DENIED**.

### A.  Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. § 2253(a),(c)(1).  A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. <u>Id.</u> at 327; <u>Moreno v. Dretke</u>, 450 F.3d 158, 163 (5th Cir. 2006).  A district court may <u>sua sponte</u> rule on a COA because the court that denies relief to a petitioner is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. <u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Escalante's § 2255 motion and the applicable Fifth Circuit precedent, the Court recommends that the motion for a certificate of appealability be denied.  The recommended finding in this case is based on an assessment of the credibility of the parties at the evidentiary hearing.  In a § 2255 proceeding, determinations concerning credibility are within the province of the trial court and the appellate courts will not "substitute its reading of the evidence" over the trial court's. <u>U.S. v. Tamayo</u>, 502 Fed. App'x. 404, 405 (5th Cir. 2012) (unpubl.) (citing <u>U.S. v. Nixon</u>, 881 F.2d 1305, 1310 (5th Cir. 1989)).  Given this limitation, jurists of reason would not conclude that the issues presented are adequate to deserve encouragement to proceed further.

### B.  Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009).  Failure to file objections timely shall bar the parties from a <u>de novo</u> determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of

plain error or manifest injustice. <u>See</u> § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on September 9, 2016.

Ronald G. Morgan
United States Magistrate Judge